UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OREST IWASIUK,

    Plaintiff,

                                                    Hon. John Corbett O'Meara

v.

TELEFLEX AUTOMOTIVE GROUP,        Case No. 05-60268

    Defendant.
_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's motion for summary judgment, filed July 20, 2006. Plaintiff filed a response brief on August 9, 2006; Defendant submitted a reply on August 18, 2006. The court heard oral argument on August 31, 2006, and took the matter under advisement. For the reasons set forth below, Defendant's motion is granted.

**BACKGROUND FACTS**

Plaintiff, Orest Iwasiuk, was employed by Defendant, Teleflex Automotive, from 1993 to 2004. He was hired as Director of Product Engineering and became a vice president in 1997. In 2001, he was named President of Teleflex Automotive, a division of Teleflex, Inc., that has 4,000 employees. As President of Teleflex Automotive, he reported to Teleflex CEO Jeff Black.

During 2003, Teleflex Automotive was not performing well under Iwasiuk's leadership. On March 9, 2004, Iwasiuk wrote to Black to "discuss an agreement for me to leave my current position at Teleflex." Iwasiuk Dep. at Ex. V. "I have given Teleflex my best effort, yet it is apparent that I lack your confidence." Id.

On March 15, 2004, Iwasiuk wrote Black again to outline options for leaving his position

as President.  See Iwasiuk Dep. at Ex. W.  Iwasiuk proposed that he would stay on during a "transition period" and receive a "reasonable settlement" or that he would stay on during a "transition period," then continue work with a "consultant agreement." Id.  With both options, Iwasiuk proposed that his stock options would continue to vest for a certain period.  Id.

Iwasiuk wrote to Black again on March 19, 2004, continuing to propose options for his departure from his position as President.  Id. at Ex. X.  He suggested that he be made responsible for "Technology, Intellectual Property, and Quality."  If that option was not attractive to Black, Iwasiuk indicated that his "desire would be to stay on with Teleflex as a consultant and manage complex projects for you in areas where I can bring value." Id.  Iwasiuk also suggested that, "if neither of the two options were applicable, I would ask that Teleflex commit to an amicable 6 month guaranteed and 6 supplemental package after the 2-month transition period." Id.

Ultimately, the parties executed a "Separation Agreement and Release," effective March 31, 2004. Id. at Ex. Y.  The agreement provided that Iwasiuk's employment was to be discontinued and that he would receive $25,666.66 per month until March 31, 2005, unless he obtained employment before then.  In exchange, Iwasiuk agreed to "provide reasonable services as requested by the company."  He also agreed to release Teleflex from "any and all claims for wages and benefits including, without limitation" stock and options. Id. at ¶ 2(a).

The agreement provided that Iwasiuk "may indicate on his resume that he was serving as a consultant and advisor to the President and Chief Executive Officer of the Company during the Severance Period." Id. at ¶ 11.  The agreement also includes a merger clause: "This Separation Agreement and Release contains the entire agreement of the parties with respect to the subject matter hereof, supersedes any prior agreements or understandings with respect to the subject

matter hereof, and shall be binding. . . ." Id. at ¶ 14.

After reviewing the agreement, Iwasiuk drafted some "clarifications and addition [sic] to the agreement," some of which appear to have been incorporated into the final draft. See id. at Ex. FF.  For example, Iwasiuk suggested that he be able to seek out consultant opportunities that would not violate his non-compete and that he be able to indicate on his resume that he was a consultant to the president and CEO of Teleflex. Id.  Iwasiuk also suggested that "[d]uring the term of the agreement or any extensions, Orest Iwasiuk's unvested stock options will continue to vest." Id.  This provision does not appear in the final agreement, which expressly provides that Iwasiuk releases Teleflex from any claims regarding stocks or options. Id. at Ex. Y.

Iwasiuk sought to exercise some of his stock options after his employment with Teleflex ended.  Under Teleflex's Stock Compensation Plan, terminated employees may continue to exercise their vested options for 90 days after their termination date.  On June 28, 2004, Iwasiuk exercised his vested options and received $13,475.  At that time, he exchanged correspondence with Black and Clark Handy, Executive Vice President of Human Resources.  Iwasiuk argued to Black and Handy that his options should continue to vest until March 2005, the end date of his separation agreement.  Handy informed Iwasiuk that his options had to be exercised within 90 days of his termination date, which was March 31, 2004.  See Iwasiuk Dep. at Exs. EE, FF, HH.  Iwasiuk did not press the stock options issue at that time.

When his separation agreement was about to end, he wrote to Black, suggesting that his agreement be extended. See id. at Ex. JJ (March 1, 2005 letter).  Iwasiuk proposed that he serve as a consultant in exchange for a "more accommodating annual retainer that would reduce the current monthly expense." Id.  Iwasiuk made no mention of the stock option issue.

Black was not interested in extending Iwasiuk's agreement.  <u>See</u> Iwasiuk Dep. at Ex. DD. On April 21, 2005, after the separation agreement ended, Iwasiuk wrote Black to demand a resolution to the stock option issue.  Iwasiuk contended that, "prior to my signing the separation agreement," Black had promised him that his stock options would continue to vest while the agreement was in force.

Teleflex takes the position that Iwasiuk expressly waived any claim to the stock options in his separation agreement and that no separate promise was made.  Iwasiuk contends that, under the separation agreement, he continued to act as a "consultant" to the company and was, therefore, entitled to stock options under the Teleflex 2000 Stock Compensation Plan.  Iwasiuk has asserted the following causes of action against Teleflex: breach of implied contract, misrepresentation, negligent misrepresentation, negligence, promissory estoppel, unjust enrichment, and fraud.  Teleflex seeks summary judgment on all of Iwasiuk's claims, as discussed below.

## LAW AND ANALYSIS

### I. Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 252 (1986).

## II.     Choice of Law

Federal courts apply the laws of the forum state to state claims in diversity cases, including the forum state's choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Davis v. Sears, Roebuck & Co., 873 F.2d 888, 892 (6th Cir. 1989). The Separation Agreement contains a choice of law clause providing that "[t]his Separation Agreement and Release shall be governed by the laws of the Commonwealth of Pennsylvania, without regard to the conflict of law principles of any jurisdiction." Michigan courts enforce choice of law provisions, absent "compelling evidence" that another state has a "materially greater interest" in having its law applied. Chrysler Corp. v. Skyline Indus. Serv. Inc., 448 Mich. 113, 133, 528 N.W.2d 698 (1995).

In this case, Plaintiff argues that Michigan law should apply to all of his claims, but does not provide a reason to invalidate the choice of law clause. Indeed, it appears that Michigan and Pennsylvania law are largely identical with respect to Plaintiff's claims and that the application of either law will not make any substantive difference. Based upon the parties' choice of law clause, however, the court will apply Pennsylvania law to Plaintiff's contractual and quasi-contractual claims of implied contract, promissory estoppel, unjust enrichment, and negligence.[1] See AGA Gas, Inc. v. Wohlert Corp., 2000 WL 1478466 (W.D. Mich. July 21, 2000) (applying parties' contractual choice of law to promissory estoppel claim).

Under Michigan law, the law of the forum governs tort claims unless there is a rational

---

[1] As discussed below, although Plaintiff characterizes Count IV of his complaint as a claim in "negligence," it is more properly viewed as a breach of contract claim. See Compl. at ¶¶ 53-56; Rosinski v. Electronic Data Sys. Corp., 770 F. Supp. 359 (E.D. Mich. 1990).

reason to displace it. <u>Olmstead v. Anderson</u>, 428 Mich. 1, 29-30; 400 N.W.2d 292 (1987).  The parties have not suggested a rational reason to displace Michigan law with respect to Plaintiff's claims of misrepresentation, negligent misrepresentation, and fraud.

### III.     **Breach of Implied Contract**

Plaintiff alleges that prior to his execution of the Separation Agreement, Black promised him that his stock options would continue to vest.  The Separation Agreement provides, however, that Iwasiuk expressly released any claim for stock or options. Agreement at ¶ 2(a). The Separation Agreement also contains an integration clause, which provides that it is the "entire agreement of the parties" and "supersedes any prior agreements or understandings" with respect to its subject matter. <u>Id.</u> at ¶ 14.  Plaintiff cannot enforce an alleged prior or contemporaneous oral promise that contradicts the unambiguous terms of the Separation Agreement.  "The parol evidence rule states that, absent fraud, accident, or mistake, parol evidence of a prior or contemporaneous oral agreement is not admissible to alter, vary, modify, or contradict terms of a contract which has been reduced to an integrated written instrument." <u>Kehr Packages, Inc. v. Fidelity Bank</u>, 710 A.2d 1169, 1172 (Pa. Super. Ct. 1998).

Plaintiff's contention that the parties entered into an implied contract to provide stock options must fail.  Such an implied contract directly contradicts the terms of the parties written agreement.  Under Pennsylvania law, a "contract implied in fact has the same legal effect as any other contract. It differs from an express contract only in the manner of its formation. An express contract is formed by either written or verbal communication. The intent of the parties to an implied in fact contract 'is inferred from their acts in light of the surrounding circumstances.'" <u>Ingrassia Const. Co., Inc. v. Walsh</u>, 486 A.2d 478, 483 n.7 (Pa. Super. Ct. 1984).  Here, the

intent of the parties regarding the issue of stock options was made clear by the express terms of the Separation Agreement.  Plaintiff cannot establish an implied contract claim in light of the unambiguous, integrated Separation Agreement.

Plaintiff also claims that he is considered to be a "consultant" under the 2000 Stock Compensation Plan, and thus entitled to stock options under that plan.  Again, Plaintiff expressly released any claim to stock or options in the Separation Agreement.  Further, the plan defines "consultant" as "an individual who provides personal services to the Company, otherwise than as an employee or director, pursuant to a contract with the Company calling for the equivalent of at least 100 work days service per year." Pl.'s Ex. G.  Plaintiff cannot point to an agreement with Teleflex under which he worked at least 100 days as a consultant.  Although Plaintiff provided "reasonable services," such as litigation support, under the Separation Agreement, Plaintiff refused to estimate how much time he actually spent providing services to Teleflex under the agreement. See Iwasiuk Dep. at 150-59.  Under these circumstances, Plaintiff has no colorable claim to stock options under the 2000 Stock Compensation Plan.

### IV.     Promissory Estoppel and Unjust Enrichment

Plaintiff also asserts claims of promissory estoppel and unjust enrichment, the gist of which is that Plaintiff acted as a "consultant" to Teleflex, thereby benefitting Teleflex, in reliance on Teleflex's promise that Plaintiff would continue to receive stock options.  Because the parties have an unambiguous written agreement that addresses stock options, Plaintiff cannot assert a promissory estoppel or unjust enrichment claim under Pennsylvania law.  See Jodek Charitable Trust R.A. v. Vertical Net, Inc., 412 F. Supp. 2d 469, 478 (E.D. Pa. 2006) (the doctrine of promissory estoppel "has no application when the parties have entered into an

enforceable agreement"); Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) (doctrine of unjust enrichment is "inapplicable when the relationship between the parties is founded on a written agreement or express contract").

**V.      Misrepresentation, Negligent Misrepresentation, Fraud**

Plaintiff asserts claims of misrepresentation, negligent misrepresentation, and fraud, all of which are based upon Teleflex's alleged false representation that Plaintiff was entitled to stock options. Under Michigan law, Plaintiff must demonstrate that he relied upon Teleflex's representation to his detriment to prevail on his misrepresentation, negligent misrepresentation, and fraud claims. See The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust, 262 Mich. App. 485, 499-502, 686 N.W.2d 770 (2004). Plaintiff cannot establish reasonable reliance, however, because the subsequent, integrated Separation Agreement contradicts the alleged representation that Plaintiff was entitled to stock options. See Dedvukaj v. Equilon Enter. LLC, 301 F. Supp. 2d 664, 671 (E.D. Mich. 2004), aff'd, 132 Fed. Appx. 582 (6th Cir. 2005) ("[r]eliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement") (citation omitted); UAW-GM Human Resources Center v. KSL Recreation Corp., 228 Mich. App. 486, 504, 579 N.W.2d 411 (1998) ("the merger clause made it unreasonable for plaintiff's agent to rely on any representations not included in the letter of agreement").

Because Plaintiff cannot establish that he reasonably relied upon Teleflex's alleged representations, his claims of misrepresentation, negligent misrepresentation, and fraud must fail.

**VI.      Negligence**

In his complaint, Plaintiff asserts a claim for negligence, contending that Teleflex

breached a "contractual duty to Plaintiff to ensure that Plaintiff would receive the benefit of the parties [sic] agreement relative to Plaintiff's compensation package. . ." Plaintiff attempts to transform breach of contract allegations into a tort, which has no legal basis. See Hart v. Ludwig, 347 Mich. 559, 565-66, 79 N.W.2d 895 (1956) (tort action will not lie for breach of promise) (Michigan law); Jodek, 412 F. Supp. 2d at 479 (noting that "plaintiffs may not recast ordinary breach of contract claims into tort claims") (applying Pennsylvania law). Plaintiff's claim for "negligence" must be dismissed.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Defendant's July 20, 2006 motion for summary judgment [docket #13] is GRANTED and that Plaintiff's complaint is DISMISSED WITH PREJUDICE.

s/John Corbett O'Meara
United States District Court

Dated: September 6, 2006

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, September 6, 2006, by electronic mail.

s/William Barkholz
Case Manager